OPINION
Plaintiffs-appellants David Worshil, et al., appeal from the February 14, 2001, and March 9, 2001, Judgment Entries of the Stark County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE
In September of 1997, appellants David Worshil and Beverly Worshil (hereinafter "appellants") entered into a "Purchase and Sales Agreement" with appellee Glenmoor Properties Limited Partnership for a single family homesite known as sublot 54 in the Estates of Glenmoor. Appellants chose their lot and entered into the agreement with the assistance of Rexine Siemund, a realtor/broker with appellee Smythe Cramer Co. Appellee Smythe Cramer Co. was, for many years, the exclusive listing agent for appellee Glenmoor Properties Limited Partnership for all of the properties in the Glenmoor development.
The "Purchase and Sales Agreement" signed by appellants states, in relevant part, as follows:
 5.2 Marketing and Promotional Fees. Buyer may contract with a Featured Builder chosen from a list provided by Seller for the construction of Buyer's house and related improvements and, in such event, Buyer acknowledges that said Featured Builder will pay a brokerage commission to Smythe-Cramer and a marketing fee to Seller equal to five percent (5%) and three-quarters of one percent (3/4%), respectively, of the contract for Buyer's house and related improvements requiring said builder to pay a brokerage commission to Smythe-Cramer and a marketing fee to Seller equal to five percent (5%) and three-quarters of one percent (3/4%), respectively, of the contract price for the home built for Buyer on the Property. The terms of this provision shall survive the delivery of the Deed and the Closing. Buyer acknowledges that a Builder who is not a Featured Builder will be required to pay the Marketing and Promotional Fees as a condition of the approval of the builder by Seller and the Architectural Review Board.
Subsequently, title to Lot 381 in the Estates of Glenmoor[1] was transferred to appellants on January 22, 1998, for the purchase price of $153,000.00. The deed transferring the property to appellants included the above language.
Thereafter, Pavlis Company, a non-featured builder, proceeded to build a home on appellants' property at a cost of approximately $600,000.00. Appellants, as part of their contract with Pavlis 
Company, voluntarily assumed Pavlis' duty and obligation to pay the 5.75% marketing and promotional fees outlined in paragraph 5.2 of the "Purchase and Sales Agreement." In a letter addressed to Mrs. Melissa Surratt, Estates of Glenmoor, dated January 22, 1998, appellant David Worshil stated as follows: "In regards to our market fee, we agree to pay $20,125 on or before February 16, 1998. This figure equates to 5.75% of $350,000."[2]
On or about May 8, 1999, appellants paid the requisite 3/4% marketing fee (or $2,625.00) to appellee Glenmoor Properties. However, appellants refused to pay the remaining five percent (5%) fee to appellee Smythe Cramer, claiming that Neil Libster of Libster Realty was entitled to at least part of such fee since he had worked with appellants in procuring the purchase of the lot in the Estates of Glenmoor. Libster is appellant David Worshil's brother-in-law. For such reason, in June of 1999, appellants placed $17,500.00, which is alleged to be the 5% fee, in escrow with appellee American Title Associates Agency, Inc.
Subsequently, on May 17, 2000, appellants and appellant Neal Libster d.b.a. Libster Real Estate filed an action for declaratory judgment against Smythe Cramer Co., Cutler Associates, Inc., and American Title Associates Agency, Inc. in the Stark County Court of Common Pleas (Case No. 2000CV01213). Appellee Cutler Associates became the exclusive listing agent for appellee Glenmoor Properties after appellee Smythe Cramer Co. The complaint indicated that class action certification pursuant to Civil Rule 23 was being requested. Appellants, in their complaint, specifically sought a declaration from the court that "any and all sums paid by any and all members of the class to Defendants Smythe Cramer Co. and Cutler as so-called "Promotional Fees" or "Marketing Fees", or to be paid are illegal, unearned commissions or assessments" and that the collection or attempted collection of the same were unconscionable acts or practices under R.C. Chapter 1345, the Consumer Sales Practices Act. Appellants further sought a declaratory judgment that appellant Libster procured appellants' purchase of the lot in the Estates of Glenmoor and, therefore, was entitled to one-half of the real estate commission.
In turn, appellee Smythe Cramer, on May 18, 2000, filed a complaint against appellants in the Stark County Court of Common Pleas (Case No. 2000CV01233). Appellee Smythe Cramer, in its complaint, sought a declaratory judgment that it was entitled to its five percent (5%) commission and that Neil Libster was not entitled to any part of the same. Pursuant to a Judgment Entry filed on June 21, 2000, in both cases, Case Nos. 2000CV01213 and 2000CV01233 were consolidated.
On June 8, 2000, appellants filed a Motion to Certify Class Action pursuant to Civil Rule 23 indicating that the class would consist of all purchasers of lots in the Estates of Glenmoor "who had paid a "so-called "Promotional Fee" or "Marketing Fee" to Defendant Smythe, Cramer Co. and Cutler Associates, Inc. . . . or who in the future may be assessed such fees." An amended Complaint adding appellee Glenmoor Properties Limited Partnership and Glenmoor Construction, Inc. [hereinafter referred to as "Glenmoor"] as defendants was filed by appellants on September 19, 2000. Thereafter, Motions for Summary Judgment were filed by appellee Glenmoor, appellee Cutler Associates, and appellee Smythe Cramer to which appellants responded.
As memorialized in a Judgment Entry filed on February 14, 2001, the trial court overruled appellants' Motion to Certify Class Action, holding that appellants had "not met their burden relative to having the matter certified as a class action." Pursuant to a Judgment Entry filed on March 9, 2001, the trial court further granted the Motions for Summary Judgment filed by appellees, finding that there were no genuine issues of material fact.
Appellants, on March 9, 2001, filed a Notice of Appeal from the trial court's February 14, 2001, Judgment Entry (Case No. 2001CA00086). On April 6, 2001, appellants filed a separate Notice of Appeal from the trial court's March 9, 2001, Judgment Entry (Case No. 2001CA 00114). Via a Judgment Entry filed on May 11, 2001, this Court consolidated the two cases.
Appellants now raise the following assignments of error:
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTIONS FOR SUMMARY JUDGMENT IN RULING THAT APPELLEES' MARKETING AND PROMOTIONAL FEES ARE PART OF THE CONSIDERATION FOR THE LAND, WHERE SUCH FEES ARE INDEPENDENT OF THE PRICE OF THE REALITY, AND WHERE THE APPELLEES NEVER PAID TO THE COUNTY AUDITOR THE MANDATORY CONVEYANCE FEE OR TRANSFER TAX ASSESSED ON THE VALUE ON ALL IMPROVEMENTS TO REAL PROPERTY; THE APPELLEES ARE THEREBY ESTOPPED TO ASSERT THAT THE FEES ARE PART OF CONSIDERATION FOR THE LAND.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEES' MOTIONS FOR SUMMARY JUDGMENT WHERE THE CONTROVERSIES BETWEEN THE PARTIES RELATE SOLELY TO THE CONSTRUCTION OF A PERSONAL RESIDENCE AND FALL UNDER THE CONSUMER SALES PRACTICES ACT, AND WHERE THE "PROMOTIONAL FEES" AND/OR "MARKETING FEES" SOUGHT BY DEFENDANTS GLENMOOR AND SMYTHE CRAMER VIOLATE THE ACT.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED AS A MATTER OF LAW IN DENYING APPELLANTS' CLASS CERTIFICATION UNDER RULE 23, WHERE THE INTERESTS OF THE PROSPECTIVE CLASS MEMBERS ARE SUBSTANTIALLY IDENTICAL TO THOSE OF APPELLANTS WORSHIL, WHERE THE CLASS IS NUMEROUS, AND ALL OTHER REQUISITES TO CLASS CERTIFICATION HAVE BEEN MET.
 ASSIGNMENT OF ERROR IV THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT, WHERE APPELLANTS' CLAIMS IN THE ALTERNATIVE REQUIRED A FACTUAL DETERMINATION AS TO WHETHER OR NOT PLAINTIFF NEIL LIBSTER WAS THE PROCURING CAUSE IN A REAL ESTATE SALE AS AGENT FOR APPELLANTS WORSHIL.
 I, II
Appellants, in their first and second assignments of error, contend that the trial court erred in granting the Motions for Summary Judgments filed by appellees. Appellants specifically contend that the trial court erred in ruling that the 5.75% marketing and promotional fees provided for in paragraph 5.2 of the Purchase and Sales Agreement signed by appellants were part of the consideration for appellants' purchase of Lot 381 in the Estates of Glenmoor and that such fees do not fall within the Consumer Sales Practices Act (CSPA).
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. Civ.R. 56(C) states in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresherv. Burt (1966), 75 Ohio St.3d 280. It is based upon this standard we review appellants' assignments of error.
As is stated above, appellants initially argue that the trial court erred in ruling that the 5.75% marketing and promotional fees provided for in paragraph 5.2 of the Purchase and Sales Agreement were part of the consideration for the land.
Without consideration, there can be no contract. Carlisle v. T RExcavating, Inc. (1997), 123 Ohio App.3d 277, 283. Under Ohio law, consideration consists of either a benefit to the promisor or a detriment to the promisee. Id. To constitute consideration, the benefit or detriment must be "bargained for". Id. If the performances or promises on one side fulfill the legal requirements of consideration, they will support any number of counter-promises on the other side Gruber v.Chesapeake Ohio Ry. Co. (N.D. Ohio 1957), 158 F. Supp. 593, 609.
We find that the trial court was correct in holding that the 5.75% marketing and promotional fees provided for in paragraph 5.2 of the Purchase and Sales Agreement were part of the consideration for the land. Appellee Glenmoor Properties conferred a benefit on appellants by transferring legal title to Lot 381 in the Estates of Glenmoor to appellants. In turn, in exchange for such benefit, appellants agreed to the conditions contained in the Purchase and Sales Agreement, including those contained in paragraph 5.2. As part of such conditions, appellants agreed that their builder would pay certain promotional and marketing fees after construction of a house on appellant's property. Thus, appellee Glenmoor Properties' agreement to transfer title to Lot 381 to appellants served as consideration for all of the promises made by appellants in signing the Purchase and Sales Agreement, including those contained in paragraph 5.2. See Gruber, supra.
Appellants further contend that the marketing and promotional fees could not be a part of the consideration because "the fees can never be collected by Appellees unless a home is constructed on the real property by a purchaser of one of the sublots;." Appellants maintain that since the payment of the 5.75% is contingent upon the actual construction of a home, the same cannot be part of the consideration for the land. We, however, do not concur. Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. Id. Clearly, payment of the 5.75% promotional and marketing fees was bargained for since appellee Glenmoor Properties, in exchange for appellants' promise to ensure that their builder paid the same, promised to transfer land to appellants. Thus, contrary to appellants' argument, appellants did receive a benefit by agreeing that the builder would pay such fees.
Appellants also assert that appellees are estopped to assert that the marketing and promotional fees are part of consideration for the land since appellees never paid the Stark County Auditor the mandatory conveyance fee or transfer tax assessed on the value of all improvements
to the realty. Appellants note that the auditor's transfer tax form shows that appellee Glenmoor paid $612.00 in transfer tax on the $153,000.00 sale price of the land and nothing on the improvements. We concur with appellees, however, that the issue in the case sub judice is not what the monetary purchase price was for the land, but rather whether there was consideration for appellants' promises under the Purchase and Sale Agreement. Such promises included, as set forth in paragraph 5.2, ensuring that their builder pay the promotional and marketing fees.
Appellants additionally maintain that the trial court erred in granting appellees' motions for summary judgment since the "controversies between the parties relate solely to the construction of a personal residence and fall under the Consumer Sales Practices Act. . ." The Ohio Consumer Sales Practices Act (CSPA), is codified at R.C. 1345.01 et seq. R.C. 1345.01(A) defines a "consumer transaction" as meaning, in relevant part, as follows:"a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." A "supplier" is defined in R.C. 1345.01(C) as follows: "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer."
Under Ohio law, the Consumer Sales Practices Act is not applicable to pure real estate transactions. Brown v. Liberty Clubs, Inc. (1989),45 Ohio St.3d 191.[3] Thus, the court in Rose v. Zaring Homes, Inc. (1997), 122 Ohio App.3d 739, held that a developer's sale of a real estate lot to purchasers for the construction of a new house did not constitute a "consumer transaction" within the Consumer Sales Practices Act and that the Act, therefore, was inapplicable to such transaction. However, the Consumer Sales Practices Act is applicable to the personal property or services portion of a mixed transaction involving both the transfer of personal property or services and the transfer of real property. See Brown, supra., syllabus. Since, in the case sub judice, there is no personal property involved in the dispute, at issue in this appeal is a determination of what is meant by the "services portion" of a mixed transaction.
Appellants argue that the transaction in this matter is a mixed transaction involving both services and the transfer of real property. For such reason, appellants contend that the Consumer Sales Practices Act is applicable since appellees Glenmoor Properties and Smythe Cramer "attempt to charge the Appellants for promotional or marketingservices,. . ." (Emphasis added.) We, however, find that the Consumer Sales Practices Act is not applicable since the transaction in this matter was a pure real estate transaction.
In the case sub judice, appellants signed a Purchase and Sales Agreement agreeing to purchase a lot in the Estates of Glenmoor. As is stated above, such agreement provided, in relevant part, as follows:
 5.2 Marketing and Promotional Fees. Buyer may contract with a Featured Builder chosen from a list provided by Seller for the construction of Buyer's house and related improvements and, in such event, Buyer acknowledges that said Featured Builder will pay a brokerage commission to Smythe-Cramer and a marketing fee to Seller equal to five percent (5%) and three-quarters of one percent (3/4%), respectively, of the contract for Buyer's house and related improvements requiring said builder to pay a brokerage commission to Smythe-Cramer and a marketing fee to Seller equal to five percent (5%) and three-quarters of one percent (3/4%), respectively, of the contract price for the home built for Buyer on the Property. The terms of this provision shall survive the delivery of the Deed and the Closing. Buyer acknowledges that a Builder who is not a Featured Builder will be required to pay the Marketing and Promotional Fees as a condition of the approval of the builder by Seller and the Architectural Review Board.
Under the language of the agreement, there were no personal services to be performed by appellees for appellants. Contrary to appellants' argument, appellees Glenmoor Properties and Smythe Cramer are not attempting to charge appellants for promotional or marketing services. Rather, the marketing and promotional services were to be performed for the benefit of the builder, whether featured or non-featured and to be paid for by the same. The Ohio Consumer Sales Practices Act is, therefore, not applicable.
Appellant's first and second assignments of error are, therefore, overruled.
 III
Appellants, in their third assignment of error, assert that the trial court erred in denying appellants' motion for class certification under Civ.R. 23. As is stated above, appellants, in their motion, indicated that the class would consist of all purchasers of lots in the Estates of Glenmoor who had paid the"so-called "Promotional Fee" or "Marketing Fee" to Defendant Smythe, Cramer Co. and Cutler Associates, Inc. . . . or who in the future may be assessed such fees." However, the trial court denied appellants' motion, holding, in part, as follows:
 The Court finds that the proposed class is not so numerous so as to make joinder of all members of the class impractable. Additionally, there are questions of law and/or fact which are not in common to all members of the class. The issues of who was required to make the payment, consideration for the payment, and the defenses which may be available as to each transaction are not in common to all members of the class and the plaintiffs have not met their burden with regard to this requirement.
 Additionally, the claims or defenses of the representative parties are not necessarily typical of the claims or defenses as to other class members because of the uniqueness of each transaction, the party required to make the payment, the party who may have actually made the payment, and the negotiations which may or may not have taken place relative to each transaction, not to mention the consideration or lack thereof as it pertains to each transaction. The plaintiffs have not met their burden with regard to this requirement. . . .
 6. The Court additionally finds that questions of fact and/or law common to members of the class generally are not predominate over questions affecting the individual transactions of class members and that of the plaintiffs. The Court further finds that a class action is not superior to having an adjudication of the rights of the parties in the within action which would serve as precedent relative to the rights of the other parties of the purported class, subject to defenses which may be unique to each particular member in the allotment.
Civ. R. 23 states, in relevant part, as follows:
(A) Prerequisites to a class action
 One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
(B) Class actions maintainable
 An action may be maintained as a class action if the prerequisites of subdivision (A) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or
 (b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.
A trial court, prior to granting certification as a class action, must make seven affirmative findings. Warner v. Waste Management, Inc. (1988), 36 Ohio St.3d 91. While two of the prerequisites are implicitly required by Civ. R. 23, five others are specifically set forth therein.Id. A trial court has broad discretion in determining whether a class action may be maintained. Planned Parenthood Ass'n of Cincinnati, Inc.v. Project Jericho (1990), 52 Ohio St.3d 56, 62. We will not disturb that determination, absent an abuse of discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. The burden of establishing the right to a class action rests upon the plaintiff. State, ex rel. Ogan, v. Teater (1978), 54 Ohio St.2d 235,247.
We find that the trial court did not abuse its discretion in denying appellant's motion requesting class certification since such decision was not unreasonable, arbitrary, or unconscionable. We concur with the trial court that appellants' claims are not typical of those of the purported class and that the proposed class is not so numerous as to make joinder of all class members impracticable. Paragraph 5.2 of the Purchase and Sales Agreement signed by appellants, which is also contained in nearly all deeds to purchasers of lots at Glenmoor, requires either a FeaturedBuilder or a non-Featured Builder, as the case may be, to pay marketing and promotional fees totaling 5.75%. In the case sub judice, the record establishes that appellants, who are not builders, voluntarily agreed to pay such fees directly to appellee Glenmoor Properties and appellee Smythe Cramer and that no fees were ever paid by appellants' builder, Pavlis 
Company. In contrast, there is no evidence that any other purchasers of lots voluntarily paid such fees directly to either Glenmoor Properties or appellee Smythe Cramer rather than having their builder do so. Thus, as appellees correctly note, appellants may be the only persons in the "class" they sought to have certified. By volunteering to pay the fees in place of Pavlis Company, their builder, appellants placed themselves in a unique position that is unlike that of other purchasers. While appellants maintain that, since the Consumer Sales Practices Act applies, the lower court erred in holding that the proposed class was not so numerous as to make joinder of all members of the class impracticable, this Court, in our above analysis, has rejected appellants' argument that the Consumer Sales Practices Act is applicable.
In addition, class certification is inappropriate since there are not questions of law or fact common to the class and since appellants were subject to unique defenses that are not typical of the claims or defenses of the class. As the trial court noted, there are questions of law and/or fact which are not in common to all members of the class as is demonstrated by the fact that appellants, unlike other purchasers of lots at the Estates of Glenmoor, voluntarily agreed to pay the 5.75% fees on behalf of their builder. By doing so, appellants placed themselves in a unique situation. There is, therefore, not a "common nucleus of operative facts." Warner, supra. at 97, following Marks v. C. P. Chemical Co. (1987), 31 Ohio St.3d 200, 202.
Moreover, as is set forth in the facts above, appellants voluntarily paid appellee Glenmoor Properties $2,625.00 in May of 1999. The $2,625.00 represented the 3/4% provided for in paragraph 5.2 of the Purchase and Sales Agreement. Pursuant to a letter to dated May 10, 1999, accompanying their check to appellee Glenmoor Properties, appellants asked appellee Glenmoor Properties for assistance in resolving appellants' dispute with appellee Smythe Cramer over whether Neil Libster was entitled to a portion of the brokerage fees. "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay. * * *" State ex rel. Dickman v. Defenbacher (1949), 151 Ohio St. 391,395. Accordingly, since appellants voluntarily paid $2,625.00 (representing 3/4% of the purchase price) to appellee Glenmoor Properties, they cannot recover such sum now. We concur that appellee Glenmoor Properties had an absolute defense to appellants' claim and that class certification, therefore, was not proper since the defense is unique to appellants.
In short, we find that the trial court did not abuse its discretion in denying appellants' Motion for Class Certification.
Appellants' third assignment of error is, therefore, overruled.
 IV
Appellants, in their fourth assignment of error, argue that the trial court erred in granting appellees' motions for summary judgment since the trial court failed to address appellants' alternative argument that, if the 5.75% promotional and marketing fees were valid and enforceable, then Neil Libster was entitled to part of the same. According to appellants, the trial court, in ruling on the Motions for Summary Judgment, should have addressed whether Libster was a procuring cause of the sale or whether Rexine Siemund was the sole procuring cause of the transaction.
The trial court, in its March 9, 2001, Judgment Entry granting appellees' motions for summary judgment, indicated that its order was a "final appealable order" and that there was "no just cause for delay." Civ. R. 54 (B) requires an expressed determination that there is no just reason for delay where a judgment is entered as to one or more but fewer than all the claims or all the parties. In the case sub judice, the trial court utilized its right under such rule to make its March 9, 2001, summary judgment order a final appealable order by indicating that "there is not just cause for delay."
Appellant's fourth assignment of error is, therefore, overruled.
JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs to appellants.
Hon. Julie Edwards, P.J. Hon. William Hoffman, J. Hon. Sheila Farmer, J. concurs.
[1] Lot 381 is comprised of a replat of sublot 54 as well as additional areas from sublot 55.
[2] It is unclear to this Court what the $350,000.00 figure represents.
[3] In Brown, a real estate developer's use of a direct mail solicitation promising "gifts" in return for a visit to the property for sale was found to be, under the plain language of R.C. 1345.01(A), a consumer transaction.